C.V. filed___X___C.V. not req._____

No delinquent taxes

Transfer Entered

3/1/2012 11:00:00 AM

Hennepin County, Minnesota
Mark V. Chapin
County Auditor and Treasurer

Doc No **A9757194**

Certified, filed and/or recorded on
3/1/12 11:00 AM
Office of the County Recorder
Hennepin County, Minnesota
Martin McCormick, Acting County Recorder
Mark V. Chapin, County Auditor and Treasurer

| Deputy 53 | Pkg ID 779466C |
|---|---|

**Doc Name: Contract for Deed**

| Document Recording Fee | $46.00 |
|---|---|
| *Document Total* | $46.00 |

This cover sheet is now a permanent part of the recorded document.

**EXHIBIT**

1

09.029.24-14-0033  PD

(Top 3 inches reserved for recording data)

| | |
|---|---|
| **CONTRACT FOR DEED**<br>**by Business Entity** | **Minnesota Uniform Conveyancing Blanks**<br>**Form 30.1.2 (2011)** |

DATE: February 13, 2012
        *(month/day/year)*

THIS CONTRACT FOR DEED (the "**Contract**") is made on the above date by 3339 Bryant LLC
        *(insert name of Seller)*

a Limited Liability Company       under the laws of Minnesota

("**Seller**"), and Julio Pina
        *(insert name of each Purchaser)*

("**Purchaser**"). *(Check box if ☐ joint tenancy.)*

Seller and Purchaser agree to the following terms:

    1. Property Description. Seller hereby sells and Purchaser hereby buys real property in Hennepin
County, Minnesota, described as follows:

Addition Name: BAKERS 4TH ADDN TO MPLS

LoT     004
BLock   011

*Check here if all or part of the described real property is Registered (Torrens)* ☐

together with all hereditaments and appurtenances belonging thereto (the "**Property**"). Unless otherwise specified, Seller hereby delivers possession of the Property to Purchaser on the date hereof.

*Check applicable box:*

■ The Seller certifies that the Seller does not know of any wells on
   the described real property.

☐ A well disclosure certificate accompanies this document or has
   been electronically filed. (If electronically filed, insert WDC
   number: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ )

☐ I am familiar with the property described in this instrument and
   I certify that the status and number of wells on the described
   real property have not changed since the last previously filed
   well disclosure certificate.

2. Title. Seller warrants that title to the Property is, on the date of this Contract, subject only to the following exceptions:

   (a) Covenants, conditions, restrictions (without effective forfeiture provisions) and declarations of record, if any;

   (b) Reservation of minerals or mineral rights by the State of Minnesota, if any;

   (c) Utility and drainage easements which do not interfere with present improvements;

   (d) Applicable laws, ordinances, and regulations;

   (e) The lien of real estate taxes and installments of special assessments which are payable by Purchaser pursuant to paragraph 6 of this Contract; and

   (f) The following liens or encumbrances:

3. Delivery of Deed and Evidence of Title. Upon Purchaser's full performance of this Contract, Seller shall:

   (a) Execute, acknowledge, and deliver to Purchaser a Warranty _____ Deed, in recordable form, conveying marketable title to the Property to Purchaser, subject only to the following exceptions:

   (i) Those exceptions referred to in paragraph 2(a), (b), (c), (d), and (e) of this Contract;

   (ii) Liens, encumbrances, adverse claims or other matters which Purchaser has created, suffered or permitted to accrue after the date of this Contract; and

   (iii) The following liens or encumbrances:

   (b) Deliver to Purchaser the abstract of title to the Property, without further extension, to the extent required by the purchase agreement (if any) between Seller and Purchaser.

4. Purchase Price. Purchaser shall pay to Seller at 3339 Bryant Ave N Minneapolis, MN 55412 _____ _____ the sum of Sixty thousand _____ _____ Dollars ($ 60000.00 _____ ), as and for the purchase price (the "**Purchase Price**") for the Property, payable as follows:

a- $10000.00 in cash or cashier's check on February 13, 2012.

b- $50000.00 in monthly installments of $ 700.00 per month up to four years starting from March 1, 2012.

c- $17100.00 as balloon payment on February 1, 2016.

d- Seller will charge 0% interest.

e- Buyer would pay $ 50.00 late fee if monthly payment is not received by the 5th of each month.

f- Buyer buying the property "AS IS". Seller gives no warranties and disclosures as seller never lived in the property.

g- Seller does not have reports or knowledge of Lead Base Paint in the property.
h- Buyer will homestead the property and will not use as rental property.

   5. Prepayment. Unless otherwise provided in this Contract, Purchaser shall have the right to fully or partially prepay this Contract at any time without penalty. Any partial prepayment shall be applied first to payment of amounts then due under this Contract, including unpaid accrued interest, and the balance shall be applied to the principal installments to be paid in the inverse order of their maturity. Partial prepayment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments.

Minnesota Uniform Conveyancing Blanks  Form 30.1.2

6. Real Estate Taxes and Assessments.  Real estate taxes and installments of special assessments which are due and payable in the year in which this Contract is dated shall be paid as follows:

Buyer will pay every month 1/12th of yearly Real estate taxes and assessments with his/her monthly payments. For year 2012 the monthly tax amount is $90.66 per month without penalty.

Purchaser shall pay, before penalty accrues, all real estate taxes and installments of special assessments assessed against the Property which are due and payable in all subsequent years. Seller warrants that the real estate taxes and installments of special assessments which were due and payable in the years preceding the year in which this Contract is dated are paid in full. If the Property is subject to a recorded declaration providing for assessments to be levied against the Property by any owners' association, Purchaser shall promptly pay, when due, all assessments imposed by the owners' association or other governing body as required by the provisions of the declaration or other related documents.

7. Property Insurance.

(a) Insured Risks and Amounts.  Purchaser shall keep all buildings, improvements, and fixtures now or later located on or a part of the Property insured against loss by fire, lightning and such other perils as are included in a standard "all-risk" endorsement, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy, including, without limitation, vandalism, malicious mischief, burglary, theft and, if applicable, steam boiler explosion. Such insurance shall be in an amount no less than the full replacement cost of the buildings, improvements, and fixtures, without deduction for physical depreciation. If any of the buildings, improvements, or fixtures are located in a federally designated flood prone area, and if flood insurance is available for that area, Purchaser shall procure and maintain flood insurance in amounts reasonably satisfactory to Seller.

(b) Other Terms.  The insurance policy shall contain a loss payable clause in favor of Seller which provides that Seller's right to recover under the insurance shall not be impaired by any acts or omissions of Purchaser or Seller, and that Seller shall otherwise be afforded all rights and privileges customarily provided a mortgagee under the so-called standard mortgage clause.

(c) Notice of Damage.  In the event of damage to the Property by fire or other casualty, Purchaser shall promptly give notice of such damage to Seller and the insurance company.

8. Damage to the Property.

(a) Application of Insurance Proceeds  If the Property is damaged by fire or other casualty, the insurance proceeds paid on account of such damage shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid, unless Purchaser makes a permitted election described in the next paragraph. Such amounts shall be first applied to unpaid accrued interest and next to the installments to be paid as provided in this Contract in the inverse order of their maturity. Such payment shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance of insurance proceeds, if any, shall be the property of Purchaser.

(b) Purchaser's Election to Rebuild.  If Purchaser is not in default under this Contract, or after curing any such default, and if the mortgagees in any prior mortgages and sellers in any prior contracts for deed do not require otherwise, Purchaser may elect to have that portion of such insurance proceeds necessary to repair, replace, or restore the damaged Property (the "Repairs") deposited in escrow with a bank or title insurance company qualified to do business in the State of Minnesota, or such other party as may be mutually agreeable to Seller and Purchaser. The election may only be made by written notice to Seller within sixty (60) days after the damage occurs. Also, the election will only be permitted if the plans and specifications and contracts for the Repairs are approved by Seller, which approval Seller shall not unreasonably withhold or delay. If such a permitted election is made by Purchaser, Seller and Purchaser shall jointly deposit, when paid, such insurance proceeds into such escrow. If such insurance proceeds are insufficient for the Repairs, Purchaser shall, before the commencement of the Repairs, deposit into such escrow sufficient additional money to insure the full payment for the Repairs. Even if the insurance proceeds are unavailable or are insufficient to pay the cost of the Repairs, Purchaser shall at all times be responsible to pay the full cost of the Repairs. All escrowed funds shall be disbursed by the escrowee in accordance with generally accepted sound construction disbursement procedures. The costs incurred or to be incurred on account of such escrow shall be deposited by Purchaser into such escrow before the commencement of the Repairs. Purchaser

shall complete the Repairs as soon as reasonably possible and in a good and workmanlike manner, and in any event the Repairs shall be completed by Purchaser within one (1) year after the damage occurs. If, following the completion of and payment for the Repairs, there remains any undisbursed escrow funds, such funds shall be applied to payment of the amounts payable by Purchaser under this Contract in accordance with paragraph 8(a) above.

(c) Owners' Association. If the Property is subject to a recorded declaration, so long as the owners' association maintains a master or blanket policy of insurance against fire, extended coverage perils and such other hazards and in such amount as are required by this Contract, then: (i) Purchaser's obligation in the Contract to maintain hazard insurance coverage on the Property is satisfied; (ii) the provisions of paragraph 8(a) of this Contract regarding application of insurance proceeds shall be superseded by the provisions of the declaration or other related documents; and (iii) in the event of a distribution of insurance proceeds in lieu of restoration or repair following an insured casualty loss to the Property, any such proceeds payable to Purchaser are hereby assigned and shall be paid to Seller for application to the sum secured by this Contract, with the excess, if any, paid to Purchaser.

9.  Injury or Damage Occurring on the Property.

(a) Liability. Seller shall be free from liability and claims for damages by reason of injuries occurring on or after the date of this Contract to any person or persons or property while on or about the Property. Purchaser shall defend and indemnify Seller from all liability, loss, cost, and obligations, including reasonable attorneys' fees, on account of or arising out of any such injuries. However, Purchaser shall have no liability or obligation to Seller for such injuries which are caused by the negligence or intentional wrongful acts or omissions of Seller.

(b) Liability Insurance. Purchaser shall, at Purchaser's own expense, procure and maintain liability insurance against claims for bodily injury, death and property damage occurring on or about the Property in amounts reasonably satisfactory to Seller and naming Seller as an additional insured.

10.  Insurance Generally. The insurance which Purchaser is required to procure and maintain pursuant to paragraphs 7 and 9 of this Contract shall be issued by an insurance company or companies licensed to do business in the State of Minnesota and acceptable to Seller. The insurance shall be maintained by Purchaser at all times while any amount remains unpaid under this Contract. The insurance policies shall provide for not less than ten (10) days written notice to Seller before cancellation, non-renewal, termination or change in coverage, and Purchaser shall deliver to Seller a duplicate original or certificate of such insurance policy or policies.

11.  Condemnation. If all or any part of the Property is taken in condemnation proceedings instituted under power of eminent domain or is conveyed in lieu thereof under threat of condemnation, the money paid pursuant to such condemnation or conveyance in lieu thereof shall be applied to payment of the amounts payable by Purchaser under this Contract, even if such amounts are not then due to be paid. Such amounts shall be applied in the same manner as a prepayment as provided in paragraph 5 of this Contract. Such payments shall not postpone the due date of the installments to be paid pursuant to this Contract or change the amount of such installments. The balance, if any, shall be the property of Purchaser.

12.  Waste, Repair, and Liens. Purchaser shall not remove or demolish any buildings, improvements, or fixtures now or later located on or a part of the Property, nor shall Purchaser commit or allow waste of the Property. Purchaser shall maintain the Property in good condition and repair. Purchaser shall not create or permit to accrue liens or adverse claims against the Property which constitute a lien or claim against Seller's interest in the Property. Purchaser shall pay to Seller all amounts, costs and expenses, including reasonable attorneys' fees, incurred by Seller to remove any such liens or adverse claims.

13.  Compliance with Laws. Except for matters which Seller has created, suffered, or permitted to exist prior to the date of this Contract, Purchaser shall comply or cause compliance with all laws and regulations of any governmental authority which affect the Property or the manner of using or operating the same, and with all restrictive covenants, if any, affecting title to the Property or the use thereof.

14.  Recording of Contract; Deed Tax. Purchaser shall, at Purchaser's expense, record this Contract in the Office of the County Recorder or Registrar of Titles in the county in which the Property is located within four (4) months after the date hereof. Purchaser shall pay

any penalty imposed under Minn. Stat. 507.235 for failure to timely record the Contract. Seller shall, upon Purchaser's full performance of this Contract, pay the deed tax due upon the recording of the deed to be delivered by Seller.

15. Notice of Assignment. If either Seller or Purchaser assigns its interest in the Property, the assigning party shall promptly furnish a copy of such assignment to the non-assigning party.

16. Protection of Interests. If Purchaser fails to pay any sum of money required under the terms of this Contract or fails to perform any of the Purchaser's obligations as set forth in this Contract, Seller may, at Seller's option, pay the same or cause the same to be performed, or both, and the amounts so paid by Seller and the cost of such performance shall be payable at once, with interest at the rate stated in paragraph 4 of this Contract, as an additional amount due Seller under this Contract. If there now exists, or if Seller hereafter creates, suffers or permits to accrue, any mortgage, contract for deed, lien or encumbrance against the Property which is not herein expressly assumed by Purchaser, and provided Purchaser is not in default under this Contract, Seller shall timely pay all amounts due thereon, and if Seller fails to do so, Purchaser may, at Purchaser's option, pay any such delinquent amounts or take any actions reasonably necessary to cure defaults there under and deduct the amounts so paid together with interest at the rate provided in this Contract from the payments next coming due under this Contract.

17. Defaults and Remedies. The time of performance by Purchaser of the terms of this Contract is an essential part of this Contract. If Purchaser fails to timely perform any term of this Contract, Seller may, at Seller's option, elect to declare this Contract cancelled and terminated by notice to Purchaser in accordance with applicable law or elect any other remedy available at law or in equity. If Seller elects to terminate this Contract, all right, title, and interest acquired under this Contract by Purchaser shall then cease and terminate, and all improvements made upon the Property and all payments made by Purchaser pursuant to this Contract (including escrow payments, if any) shall belong to Seller as liquidated damages for breach of this Contract. Neither the extension of the time for payment of any sum of money to be paid hereunder nor any waiver by Seller of Seller's rights to declare this Contract forfeited by reason of any breach shall in any manner affect Seller's right to cancel this Contract because of defaults subsequently occurring, and no extension of time shall be valid unless agreed to in writing. After service of notice of default and failure to cure such default within the period allowed by law, Purchaser shall, upon demand, surrender possession of the Property to Seller, but Purchaser shall be entitled to possession of the Property until the expiration of such period. Failure by Seller to exercise one or more remedies available under this paragraph 17 shall not constitute a waiver of the right to exercise such remedy or remedies thereafter.

18. Binding Effect. The terms of this Contract shall run with the land and bind the parties hereto and the successors in interest.

19. Headings. Headings of the paragraphs of this Contract are for convenience only and do not define, limit, or construe the contents of such paragraphs.

20. Additional Terms: Check here if ☒ an addendum to this Contract containing additional terms and conditions is attached hereto.

Seller

_3339 Bryant LLC_
(name of Seller)

By: _Riaz Shad_
(signature)

Its: _CEO_
(type of authority)

By: _____
(signature)

Its: _____
(type of authority)

Purchaser

_JULIO PINA_
(signature)

_____
(signature)

Page 6 of 6                                              Minnesota Uniform Conveyancing Blanks   Form 30.1.2

State of Minnesota, County of _Hennepin_____

This instrument was acknowledged before me on ___02/13/2012_____, by ___RIAZ SHAD_____
                                                  (month/day/year)                    (name of authorized signer)

_____ as ___CEO_____
                                                                          (type of authority)

and by _____
                                              (name of authorized signer)

as _____ of ___3339 Bryant LLC_____.
         (type of authority)                          (name of Seller)

(Stamp)

MICHAEL STEVEN STUDNICKA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

_Michael Steven Studnicka_____
(signature of notarial officer)

Title (and Rank): _Notary Public_____

My commission expires: ___01/31/2015_____
                                         (month/day/year)

State of Minnesota, County of _Hennepin_____

This instrument was acknowledged before me on ___02/13/2012_____, by ___JULIO PINA,____
                                                  (month/day/year)

_Single Man_____
                                      (insert name and marital status of each Purchaser)

_____

(Stamp)

MICHAEL STEVEN STUDNICKA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

_Michael Steven Studnicka_____
(signature of notarial officer)

Title (and Rank): _Notary Public_____

My commission expires: ___01/31/2015_____
                                         (month/day/year)

THIS INSTRUMENT WAS DRAFTED BY:
(insert name and address)

Riaz Shad
940 44th Ave NE # 21096
Columbia Heights, MN 55421

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS
INSTRUMENT SHOULD BE SENT TO:
(insert legal name and residential or business address of Grantee)

Julio Pina
316 22nd Ave N
Minneapolis, MN 55411

**Note: Failure to record this contract for deed may give other parties priority over Purchaser's interest in the property.**

**CONTRACT FOR DEED ADDENDUM**

Minnesota Uniform Conveyancing Blanks
Form 30.2.1 (2010)

THIS CONTRACT FOR DEED ADDENDUM (this "Addendum") is attached to and made a part of that certain Contract for Deed dated
February 13, 2012 _____ between 3339 Bryant LLC _____
_____*(month/day/year)*_____*(insert name of Seller)*_____
_____ ("Seller"),
and Julio Pina _____ ("Purchaser").
_____*(insert name of Purchaser)*_____

The terms and conditions contained in the Addendum shall supersede any conflicting provisions contained in this Contract. Unless defined in this Addendum, all capitalized terms have the same meaning as in the Contract. Only those provisions checked in the "Yes" column, below, shall be included and be part of this Addendum.

Yes  No

■  ☐  **A. Late Payment Fee.** If any payment is not received by Seller within fifteen (15) days of the date when due, Purchaser shall additionally pay to Seller, to the extent allowed by law, a late charge of four percent (4%) of the amount of the delinquent payment.

■  ☐  **B. Transfer Restrictions.** Purchaser may not sell, assign, or otherwise transfer Purchaser's interest in this Contract, or the Property, or any part thereof, or if Purchaser is an entity, the controlling interest in Purchaser may not be transferred without the written consent of Seller, which consent:

*(check only one box)* ■ shall be granted or withheld in the sole discretion of Seller.
                    ☐ shall not be unreasonably withheld, or delayed by Seller.

■  ☐  **C. Escrows.** In Addition to the monthly payments of principal and interest, Purchaser shall deposit with Seller, with each payment, an amount representing one-twelfth (1/12) of the annual real estate taxes, installments of special assessments, and insurance premiums with respect to the Property (or such other amount as Seller is required to deposit under any underlying encumbrance on the Property). The amount of such taxes, special assessments, and insurance premiums, when unknown, shall be estimated by Seller. Such deposit shall be used by Seller to pay real estate taxes, installments of special assessments, and insurance premiums with respect to the Property when due. If Seller fails to do so, Purchaser may, at Purchaser's option, pay any such delinquent amounts and deduct the amounts so paid from payments next coming due under this Contract. If the balance deposited with Seller is insufficient to pay such real estate taxes, special assessments and insurance premiums when due, Purchaser shall pay the deficiency to Seller upon written demand.

■  ☐  **D. Property Improvements.** Except for work reasonably necessary to permit Purchaser to comply with Purchaser's obligations under this Contract, Purchaser shall not hire or perform any repairs or improvements to or replacements of the Property having an aggregate cost in excess of five thousand _____
_____ Dollars ($ 5000.00 _____) without securing the prior written consent of the Seller. Purchaser will not cause or permit any mechanics' liens to be recorded against the Property. Purchaser agrees to defend, indemnify, and hold Seller harmless from any loss, damage, or expense incurred by Seller with respect to any party asserting a mechanics' lien claim, it being understood and agreed that this undertaking shall survive cancellation of this Contract or the delivery of a deed pursuant to the terms hereof.

■  ☐  **E. Hazardous Substances.** Purchaser shall not bring, store, generate, or treat hazardous wastes or substances or petroleum products upon the Property, except for small quantities which are stored and used in compliance with applicable law. Purchaser hereby agrees to indemnify, defend and hold Seller harmless from any and all claims, demands, actions, causes of action, liabilities or rights which may be asserted against Seller with respect to such substances, or products, it being understood and agreed that this obligation will survive the cancellation of this Contract or the delivery of a deed pursuant to the terms hereof.

**Note: This document must be attached to a contract for deed and cannot be independently recorded.**

■ ☐ **F. Alternative Acceleration Remedy.** If Purchaser fails to timely perform any term of this Contract, Seller may elect, on thirty (30) days written notice given to Purchaser, to declare the entire unpaid Purchase Price, together with accrued interest thereon, immediately due and payable in full and commence an action against Purchaser to collect all amounts due hereunder. Purchaser shall have the right to reinstate this Contract at any time before entry of final judgment against Purchaser for amounts due hereunder if Purchaser: (i) pays Seller all sums due hereunder as of the date of reinstatement; (ii) cures any other defaults existing under this Contract as of the date of reinstatement; and (iii) pays all expenses incurred by Seller in enforcing this Contract, including, but not limited to, reasonable attorneys' fees and costs. Seller shall deliver the deed for the Property in the manner required by paragraph 3 of this Contract when all amounts due hereunder have been paid.

■ ☐ **G. Nonrecourse Obligation.** Notwithstanding any other provision contained in this Contract to the contrary, if Purchaser defaults in Purchaser's performance of this Contract, Seller's sole remedy shall be to cancel this Contract in accordance with Minn. Stat. 559.21, as the same may from time to time be amended. Seller specifically waives any right it may have to commence an action for the specific performance of this Contract or any right it may have to seek an award of damages against Purchaser.

■ ☐ **H. Additional Provisions.**

1- Buyer will complete all the city orders in timely manner. If buyer fails to complete city orders in timely manner seller can cancel this contract by notice to buyer. If contract is cancelled buyer's money paid as deposit and monthly installments will be forfeited to seller and buyer has to vacate the property immediately.

Riaz Shad

CEO

3339 Bryant LLC

(SELLER)

2/13/2012

JULIO PINA

JULIO PINA

(purchaser)

2/13/2012

Note: This document must be attached to a contract for deed and cannot be independently recorded.

# All-purpose Acknowledgment

STATE OF _Minnesota_ , COUNTY OF _Hennepin_

On _02/13/2012_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Riaz Ahmed Shad_ _and_ _Julio Pina_

○ personally known to me —OR— ⊗ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Michael Steven Studnicka_

Name (type or printed) _Michael Steven Studnicka_

My commission expires: _01/31/2015_

MICHAEL STEVEN STUDNICKA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2015

(Seal)

HEL7494 (2-06 97916)