# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MARIE WARD, | Case No. 18-CV-01933 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON DEFENDANTS' MOTION TO DISMISS |
| RIAZ SHAD and 2959 BRYANT, LLC, | |
| Defendants. | |

Plaintiff Marie Ward bought a home from Defendants Riaz Shad and 2595 Bryant, LLC, on contract for deed, and brings a claim under the Truth in Lending Act. The Truth in Lending Act applies only to creditors defined specifically under the statute, and it includes a numerical requirement for the number of credit extensions made by the purported creditor. Defendants here bring a motion to dismiss, arguing they do not meet the numerical requirement, and thus the definition of "creditor," under TILA. For the reasons stated below, the Court denies the motion to dismiss.

## BACKGROUND

The Complaint alleges the following facts:

Plaintiff Marie Ward is an elderly, vulnerable adult with a fifth-grade education. [ECF No. 1 ("Compl.") at ¶¶7, 10–14.] In 2013, Ward agreed to buy a home on contract for deed from Defendant Riaz Shad through his company, 2959 Bryant, LLC ("2595

Bryant"). (*Id.*, ¶¶77, 95, 248.) The agreed upon purchase price was $80,000, though Shad had purchased it three years earlier for $25,000 and made no improvements. (*Id.*, ¶¶34, 64, 78, 184(c), (e)-(f).) Shad took Ward to the bank by herself and had her execute a contract for deed for $180,000, not $80,000. At the same time, he had her sign a quit claim deed signing away any rights she had received under the contract for deed back to 2959 Bryant. (*Id.*, ¶¶88–89, 96–97, Ex. N.) The terms of the contract for deed included payment of $650 per month, but Shad demanded and collected $1,050 or $1,100 per month instead. (*Id.*, ¶¶101(a)–(b).) 103, 106–107, Ex. M.) Defendants then attempted to evict Ward by recording the quit claim in the property records in 2018, and filed a complaint in Hennepin County housing court alleging breach of a verbal lease agreement. (*Id.*, ¶¶130–135, 139, Exs. N, R.)

This suit alleges violations of TILA and several state law claims. Ward argues that Shad meets the definition of creditor under TILA because he is a sophisticated real estate operator who has owned many properties through various limited liability companies. (*See id.*, ¶¶17–19, tbl.) From 2009 through 2017, he purchased many North Minneapolis properties through LLCs created expressly for those purchases, even naming the LLCs for the specific addresses. (*Id.*) At least three other family members or business associates were involved in some of Shad's real estate purchases. (*See id.*, ¶19, tbl.) Around the time Ward executed the contract for deed, Shad had interest in at least 12 houses in North Minneapolis. (*Id.*) The scheme Ward asserts under TILA is that Shad enters into contracts

2

for deed and has the buyers execute quit claim deeds back to the sellers, his LLCs, before the buyer defaults on the contract, for the purpose of avoiding contract for deed cancellation requirements. (*Id.*, ¶¶25–28, tbl.) Ward asserts at least six such contracts for deed between 2011 and 2015. (*Id.*, ¶27, tbl.) In addition, Ward alleges Defendants were interchangeable, in that Shad wrote money orders out to himself personally rather than to 2959 Bryant, and obtained a rental license in his own name rather than as 2959 Bryant. (*Id.*, ¶¶43, 50, 104, 125, Ex. A.)

Shad also masks interest in inflated purchase prices and lump sum payments due about a year into the contracts, despite claiming the contracts for deed are "no interest" loans. (*Id.*, ¶228.) This hidden interest is present in Ward's loan in the form of an inflated purchase price, a $10,000 lump sum payment due one year into the contract, and a demand from Shad for $400–$450 more per month than the contract required. (*Id.*, ¶214.) Ward asserts that Shad has spread his real estate holdings among family, business associates, and separate LLCs, all in an attempt to avoid responsibility as a "creditor" under TILA. (*Id.*, ¶¶20–22.)

## ANALYSIS

I. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the

3

Court must accept as true all factual allegations and view them in the light most favorable to the plaintiff. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). When "addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mulvenon v. Greenwood*, 643 F.3d 653, 656–57 (8th Cir. 2011) (quotation and citation omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008); *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Whether a complaint states a claim is a matter of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss must be granted when the complaint does not allege "enough facts to state a claim to relief that is plausible on its face," rather than merely conceivable. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678–79.

## II. Shad's Declaration is Excluded.

When "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss "must be treated as one for summary judgment." Fed. R. Civ. P. (12)(d). But a "court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record" without converting a motion to dismiss as one for summary judgment. *Mulvenon v. Greenwood*, 643 F.3d 653, 656–57 (8th Cir. 2011) (citation and quotation omitted).

Shad submitted a declaration with his moving papers, asserting that he made no personal loans and was involved in only four sales of real property between 2012 and 2013. [ECF No. 20 ("Shad Decl.") at ¶¶4–5.] Attached to the declaration are exhibits of contract for deeds for those sales. (*Id.*, ¶¶9, 13, 22.) While the exhibits are matters of public record, Shad's statements that he made no personal loans and was involved in only four sales are not part of the public record, nor are they embraced by the Complaint. Considering these statements would require the Court to treat the motion as one for summary judgment, which the Court declines to do. *See* Fed. R. Civ. P. 56(d); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (D. Minn. 1999) ("As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'") (quoting *In re TMJ Litigation*, 113 F.3d 1484, 1490 (8th Cir. 1997)).

### III. The Complaint sufficiently alleges Defendants meet the definition of a creditor under TILA.

TILA "assure[s] meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available." 15 U.S.C. § 1601(a). Under TILA, creditors must provide certain disclosures to consumers who borrow money. 15 U.S.C. § 1638(a). Defendants argue that they are not "creditors" within the definition of TILA, and therefore the Complaint must be dismissed. TILA defines a creditor as:

> A person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). This two-part test requires a person to (1) regularly extend credit and (2) own the debt at issue.

#### A. Numerical requirement of a "Creditor"

The regulations applying to TILA, and particularly "Regulation Z," describe the numerical requirements for the term "regularly extend credit":

> A person regularly extends consumer credit only if it extended credit more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year. If a person did not meet these numerical standards in the preceding calendar year, the numerical standards shall be applied to the current calendar year.

6

12 C.F.R. § 226.2(17)(v). A person can also "regularly extend credit" by extending two or more "high cost" transactions, as defined under 12 C.F.R. § 1026.32, in a 12-month period. 12 C.F.R. § 1026.2(a)(17)(v).

Defendants argue that neither Shad nor 2959 Bryant alone meet the numerical requirement, and that because the contract for deed at issue identifies only 2959 Bryant as the seller, Shad cannot possibly be the true creditor at issue and be held liable under TILA. Defendants are correct that Shad, individually, and 2959 Bryant, individually, do not appear to meet the numerical requirements based on the allegations in the Complaint. Ward argues that the Court should not view the defendants individually, but instead collectively, because Shad orchestrated schemes with multiple entities that are part of a single-defined enterprise run by and serving the interests of one person—Shad. Thus, Ward asks the Court to consider transactions not just by 2959 Bryant, but all transactions that "Shad, through his companies, individually, and through his family and associates" entered into. (Compl., ¶22.)

In urging the Court to view Defendants as a single entity, Ward emphasizes the Eighth Circuit's view of the remedial nature of TILA. *See, e.g., Griffith v. Superior Ford*, 577 F.2d 455, 457 (8th Cir. 1978) ("The Truth in Lending Act is unquestionably remedial legislation."). "The Act is remedial in nature, and the substance rather than the form of credit transactions should be examined in cases arising under it." *Hickman v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 46 (8th Cir. 1977). "The legislative history of the TILA shows

that Congress was aware that some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish," and thus, in analyzing whether a situation falls under TILA, "the practices of the trade, the course of dealing of the parties, and the intention of the parties in addition to specific contractual obligations must be considered." *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982) (citations and quotations omitted). Likewise, this Court, when it considered whether an agreement fell under TILA's definition of "consumer credit transaction" has rejected elevating form over substance. *Jones v. Rees-Max, LLC,* 514 F. Supp. 2d 1139, 1145 (D. Minn. 2007). Rather than being confined to the plain terms of the documents at issue, the Court found the "true inquiry" to be what the intention of the parties were. *Id.* Thus, this Court should consider the substance of the alleged transactions and business relationships, rather than the form.

Ward argues that the combining of transactions from facially distinct entities, all in the service of one enterprise, is specifically contemplated under TILA. The official staff interpretations of TILA provide that the term "person" as used in the definition of "creditor" includes joint ventures. *See* 12 C.F.R. § Pt. 226, Supp. I, Subpt. A, 226.2(a)(22) ("A joint venture is an organization and is therefore a person.") A joint venture exists when two or more persons combine their money, property, time, or skills in a business enterprise and agree to share the resulting profits, *Rehnberg v. Minnesota Homes,* 52 N.W.2d 454, 456-57 (Minn. 1952), and "requires proof of contribution, joint control,

sharing of profits, and a joint venture contract." *Ringier Am., Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 828 (8th Cir. 1997). To establish a joint venture under Minnesota law, the Court considers the unique facts of the case. *A.P.I., Inc. v. Home Ins. Co.*, 706 F. Supp. 2d 926, 942 (D. Minn. 2010) (citing *Rehnberg*, 252 N.W.2d at 457). At a minimum, the party seeking to establish a joint venture must prove: (1) the existence of a contract, express or implied, showing that the parties entered into a joint venture; (2) that the parties combined "their money, property, time, or skill in some common undertaking"; (3) the existence of "a proprietary interest and right of mutual control over the subject matter of the property engaged therein"; and (4) the existence of an express or implied agreement that the parties share the profits of the venture. *Id.*

Here, the Complaint alleges facts sufficient to survive a motion to dismiss under a joint venture theory. The Court need not reach the ultimate decision of whether Defendants are a single entity under a joint venture theory for purposes of the TILA creditor definition, because the question here is whether Ward has pled sufficient facts for a plausible showing that Defendants are creditors. *See Schaaf*, 517 F.3d at 549 ("The plaintiffs need not provide specific facts in support of their allegations … but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level.") (citations omitted).

Ward has alleged sufficient facts under *Twombly* and *Iqbal* to support that Defendants meet the numerical requirement of the "creditor" definition. Ward provides

9

specific allegations and support that Defendants, together, plausibly meet the numerical threshold because of Shad's interconnected real estate holdings and business practices. Namely, Ward alleges Shad's real estate holdings were significant around the time he sold Ward the contract for deed at issue, evident in that he had interest in at least twelve houses in North Minneapolis in 2012 and 2013. (*See* Compl., ¶19, tbl.) The Complaint sufficiently alleges that Shad is in the business of buying, renting, and selling real estate and does so through limited liability companies, by alleging that from 2009 through 2017 he purchased many North Minneapolis properties through LLCs created expressly for those purchases. (*See id.*, ¶¶17–19.) At least three other family or business associates were involved in some of Shad's real estate purchases. (*See id.*, ¶19, tbl.) Ward further alleges Shad's LLCs frequently sold houses on contracts for deed and found at least six sales between 2011 and 2015 where quit claim deeds were subsequently recorded in order to quickly remove the buyer from the property without providing proper notice. (*Id.*, ¶¶25–28, tbl.) Finally, Ward alleges Defendants kept poor or no business records through assertions that Shad wrote Ward's money orders out to himself personally rather than to 2959 Bryant, (*id.*, ¶¶43, 104, 125), and obtained a rental license in his name and not as 2959 Bryant (*id.*, ¶50). These specific allegations make Ward's claim that Defendants extended credit secured by a dwelling more than five times in 2012 plausible.[1] *See Twombly*, 550

---

[1] Ward likewise sufficiently alleges Defendants plausibly extended two or more HOEPA loans in a 12–month period. This theory, too, meets the plausibility test. "Defendant Shad has shown a pattern and practice of offering 'no interest' loans while hiding the true

U.S. at 556 ("Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim].")

B. **Creditor on face of the instrument**

The second prong of TILA's creditor definition requires Defendants to be "the person[s] to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g). Defendants argue that Shad does not meet this prong because he is not the person to whom the debt is initially payable on the face of the evidence of indebtedness. The contract for deed at issue lists only 2959 Bryant as the seller. (*See* Compl., Ex. M.) Because Shad is not the creditor named on the contract for deed, Defendants argue, he cannot be a creditor for TILA purposes.

In response, Ward again (and correctly) highlights that the Eighth Circuit broadly construes TILA in favor of consumers. *See Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 845 (8th Cir. 2009). She then alleges that both Defendants meet the second prong of TILA's definition of creditor by using a veil–piercing theory. While the Eighth Circuit has not

---

interest as lump sum payments due a year or so into the contracts, and by inflating purchase prices." (*Id.*, ¶228). The Complaint includes specific facts of this practice by demonstrating that Ward's loan had hidden interest by inflating the purchase price and including a $10,000 lump sum payment due one–year into the contract and Defendants verbally instructed Ward that she owed $400–$450 more per month than what was required by the contract. (*Id.*, ¶214.)

11

decided this issue, other district courts have permitted using the veil–piercing theory in a TILA context. *See, e.g., Arrington v. Colleen Inc.*, No. Civ. AMD 00–191, 2000 WL 34001056, at *6 (D. Md. Aug. 7, 2000) (finding that despite the individual defendants were not the persons "to whom the debt … was initially payable on the face of the evidence of the indebtedness," plaintiffs pled sufficient facts that defendants were intimately involved in the creation, ownership, and operation of the corporate defendants "so as to foreclose any conclusion at this stage … that this is not a case justifying … the piercing [of] the corporate veil"); *Cassese v. Wash. Mut., Inc.*, 711 F.Supp.2d 261, 275 (E.D.N.Y. 2010) (allowing class plaintiffs to assert a TILA claim against a parent–company based on actions of its subsidiary, "regardless of whether [parent–company] was in fact a 'creditor' as defined by TILA."); *see also Longo v. First Nat'l Mortg. Sources*, No. 07-4372 MLC, 2010 WL 415330, at *2–4 (D.N.J. Jan. 29, 2010) (finding that "the plaintiffs have alleged facts sufficient to present a genuine issue of material fact as to whether the corporate veil should be pierced" to hold defendant liable for its subsidiaries' TILA violations); *In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385, 423–27 (S.D.N.Y. 2003) (dismissing TILA claims where defendant parent–banks did not directly extend credit and because plaintiffs did not sufficiently plead a corporate veil–piercing theory, making only purely conclusory allegations that the defendants "exercised [ ] dominion and control over its subsidiaries"); *Warburton v. Foxtons, Inc.*, No. Civ. A 04-2474 FLW, 2005 WL 1398512, at *8 (D.N.J. June 13, 2005) (providing "a parent is not a creditor … solely by

virtue of ownership of a subsidiary that fits that definition," rather "the corporate veil will be pierced, and a parent company will be held liable, only where a subsidiary functions as an instrumentality or alter ego of the parent, and that the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.") (citations and quotation omitted).

The Court need not decide as a matter of law whether Defendants are creditors under the corporate veil–piercing theory. Ward has pled facts sufficient under *Twombly* and *Iqbal* that both Defendants are plausibly creditors under TILA, regardless of who is listed as the seller on the contract for deed. Ward has pled her intent to pierce the corporate veil by alleging that she "is further entitled to recover damages from Defendant 2959 Bryant LLC and from Defendant Shad, because Shad is the alter-ego of 2959 Bryant LLC." (Compl. at 2); *see Damon v. Groteboer*, No. 10–92 JRT/FLN, 2011 WL 886132, at *6 (D. Minn. Mar. 14, 2011) (finding plaintiff pled "[p]iercing of the corporate veil … is necessary to avoid injustice or fundamental unfairness" was notice of the intent to use veil–piercing, and that notice of the intent to pierce the corporate veil was sufficient to withstand a motion to dismiss) (citing *Murrin v. Fisher*, Civ. No. 07–1295, 2008 WL 540857, at *22 (D. Minn. Feb. 24, 2008) ("In order to survive a Motion to Dismiss, the [Plaintiffs] are not required to plead the factors that are set out in *Victoria Elevator* ... they merely have to provide the Defendants with notice as to the theory on which they plan to proceed, and of their intent to pierce the corporate veil."). Ward has plausibly alleged that, through

13

a veil–piercing theory, [2] both Defendants fulfill the second prong of TILA's creditor definition and, thus, the Complaint survives.[3] *See Twombly*, 550 U.S. at 555–56.

IT IS SO ORDERED.

Dated: March 7, 2019                                        BY THE COURT:

                                                                              s/Nancy E. Brasel
                                                                              Nancy E. Brasel
                                                                              United States District Judge

---

[2] Ward has also pled sufficient facts that Defendants are creditors under the second prong of TILA's definition by alleging specific *Victoria Elevator* factors, which support corporate veil–piercing. *See Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979) (determining whether an individual is an alter ego of a corporation depends if the following factors are present: "insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.") Here, Ward pled many allegations – including that Shad structured his real estate transactions in a way to avoid liability under state and federal laws and that he addressed money orders to himself rather than to 2959 Bryant – that are a based upon the *Victoria Elevator* factors. (*See* Compl., ¶¶21, 43, 104, 125.)

[3] Because the Court finds Ward plausibly alleged a claim under TILA, the Court continues to have supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a). Thus, the eleven state law claims also survive the motion to dismiss.